*COOLEY & BANGS vs. BETTS.* [ *203 ]

An action will not lie against a factor or agent to whom goods are sent to be sold at auction, without a *demand* of the proceeds or *instructions to remit*, before suit brought.

*It seems* that there is a distinction between an action for *not accounting* and an action for *not paying over* the proceeds of goods sold, and that in the former case it is enough to show a neglect to account within a reasonable time, to maintain the action.

ERROR from the New York common pleas. Betts sued Cooley and Bangs in the common pleas, and declared on the common counts in *assumpsit* for goods sold, money had and received, &c. The declaration also contained a special count that in consideration that the plaintiff would deliver goods, wares and merchandizes to the defendants, to be sold by them for him, they undertook to sell the same, and to render a true and just account of the sale

and of the proceeds *when they should be thereunto afterwards requested.* The plaintiff then averred a delivery of the goods to the defendants, a sale by them, and a *request* to account and pay over, and for breach alleged that the defendants had not rendered an account of the goods or of the moneys arising from the sale. There was a second special count, similar to the first. The defendants pleaded *non-assumpsit* as to all but $28,98, and as to that a tender. The tender was admitted in the replication. On the trial in the C. P. the plaintiff proved that in March, 1837, he sent a quantity of books which cost $419,16, to the defendants, to be sold at *auction*, and that the defendants during the same month sold the books. Upon this proof he rested. The action was commenced in October, 1837. The defendants moved for a nonsuit on the grounds : 1. that *no demand* of an account or request for a settlement had been shown ; and 2. that there was no proof of the amount for which the goods sold. The motion was denied, and the defendants excepted. In the further progress of the trial, the defendants showed that the proceeds of the plaintiff's goods on the sale were $210,07. A verdict having passed against the defendants, they sued out a writ of error.

[ *204 ]     *Willis Hall,* (attorney general,) for the plaintiff in error.

*R. Lockwood,* for the defendant in error.

*By the Court,* BRONSON, J.   In the absence of any express stipulation between the parties, the law will imply a promise by a factor, bailiff or other agent to render an account to his principal ; but it seems not to be fully settled whether the agent will be deemed in default after the lapse of what may be considered *a reasonable time,* or whether he must be plainly put in the wrong, by showing a *demand* before suit brought.

So far as relates to the two special counts, it is not necessary to decide this question, for the plaintiff has not declared on a promise to account *within a reasonable time,* but on a promise to account on *request ;* and a special request is alleged in stating the breach. The plaintiff has put his own construction upon the contract, and if we should think him mistaken, and that he might have recovered in another form of declaring, I do not see how we can help him out of the difficulty. In the language of Best, C. J. in *Elbourn* v. *Upjohn,* 1 *Carr. & Payne,* 572, the plaintiff has tied himself down to a particular averment, which he is bound to prove.

But as the declaration also contains the money counts, the question is presented in another form. In relation to those counts, I may remark, that it does not appear whether the factors were to sell for cash or on credit, nor whether they have received the money. But if we assume that the sale was for cash, and that the money was paid, I still think the plaintiff cannot recover without showing a demand, or instructions to remit. The action is

founded on a supposed breach of trust, which must be made out affirmatively, before the agent can be charged.

In *Buller's N. P.* 148, it is said, that where *indebitatus assumpsit* is brought for money received *ad computandum*, it is necessary to prove a misapplication, or breach of trust; for if a man receive money to a special purpose, it is not to be demanded of the party as a duty, till he have neglected *it, or refused to apply it according to the trust. He cites [ *205 ] *Poulter* v. *Cornwall*, 1 *Salk*. 9, where the money was received *ad computandum*, and on a motion in arrest of judgment, the court said, it must be intended, after verdict, that there was proof to the jury that the defendant refused to account, or had done somewhat else that rendered him an absolute debtor. In *Ferris* v. *Paris and others*, 10 *Johns. R.* 285, the defendants were foreign factors, and had rendered an account of the goods which had been consigned to them for sale. It was held that an action against them for the proceeds of the goods would not lie, until they were shown to be in default, by proving a demand, or an improper disregard of instructions to remit the money. In *Taylor* v. *Bates*, 5 *Cowen*, 376, it was held that an action would not lie against an attorney for money collected for his client, until after a demand, or a request to remit. *Woodworth*, *J*. said, the contrary doctrine would be in opposition to the nature of the defendant's trust, as well as against justice and good faith. The same point was adjudged in *Rathbun* v. *Ingalls*, 7 *Wendell*, 320, where the plaintiff was nonsuited, although several years had elapsed between the time of collecting the money and the bringing of the action. In *Topham* v. *Braddick*, 1 *Taunt*. 572, the defendant was a foreign factor, *see p*. 104, and it was held that no action would lie for not rendering an account of the goods consigned to him for sale, until there had been a demand by the principal; and, consequently, that the statute of limitations did not commence running when the goods were sold, but on a demand made.

In Massachusetts, the rule seems to be that a request is not necessary in the case of a *foreign* factor, on account of the great inconvenience and embarrassment to trade which would follow, if the merchant was obliged to send abroad to make a demand : and, in general, the factor to whom goods have been consigned for sale, is liable to an action without showing a request, if he neglect to render an account within a reasonable time ; but if he has rendered an account at the proper time, an action for the proceeds of the goods will not lie without a demand, unless it appears *from [ *206 ] the course of the business that the factor was to remit without instructions. *Clark* v. *Moody*, 17 *Mass. R.* 145. *Langley* v. *Sturtevant*, 7 *Pick*. 214. *Dodge* v. *Perkins*, 9 *id*. 368, 387. I do not understand these cases as conflicting with the doctrine, that this action for money had and received to the plaintiff's use, cannot be maintained without showing ei-

ther a demand, or instructions to remit; or, that, according to the course of this business, it was the duty of the defendants to remit without instructions; neither of which facts were proved in this case.

Whether the distinction taken in the Massachusetts cases in relation to foreign factors, rests on a solid foundation, we need not now consider; for it does not appear in this case but that both parties reside in the same state. But I cannot forbear to remark, that the inconvenience of sending abroad to make a demand, cannot alter the nature of the factor's trust: and if other agents are not in default until after a request, I can see no principle which will subject the foreign factor to an action without a demand. In *Ferris* v. *Paris*, 10 *Johns. R.* 285, and in *Popham* v. *Braddick*, 1 *Taunt.* 572, the defendants were foreign factors, and in both cases a demand by the principal was held to be necessary.

I am not disposed to deny that there may be a sound distinction between an action for not accounting, and an action for not paying over the proceeds of the goods. It is the duty of an agent to render an account of his transactions to his principal within a reasonable time, and when it appears that he has neglected to do so, an action for not accounting may, perhaps, be maintained without a demand. But here there was no evidence to show that the defendants had not rendered an account. And besides, the action is for not paying over the proceeds of the goods—the special counts being laid out of the case—and in such an action it is necessary to show a demand, or instructions to remit.

After a great lapse of time, and when nothing appears to the contrary, it may be presumed not only that there has been a demand by the principal, but that an account has been rendered and settled by the agent. *Topham* v. *Braddick*, 1 *Taunt.* 572. But that doctrine obviously proves too [ *207 ] *much for the plaintiff's case. In the absence of any direct evidence on the subject, there is, at the least, as much reason for presuming that the defendants have faithfully discharged their trust, as there is for presuming them guilty of a culpable neglect of duty; and if we presume a demand by the plaintiff, we must presume also an account and payment of the proceeds by the defendants.

The defendants offered a set-off for other goods purchased by the plaintiff at the same auction, which was called a "trade's sale;" but the case is defective on this point, in not stating that any question was made and exception taken after the proof came out that a part of those goods had been delivered. On another trial, it may be difficult for the plaintiff to distinguish the case from that of *Mills* v. *Hunt*, 17 *Wendell*, 333. But the judgment must be reversed on the other ground.

Judgment reversed.