By the Court. Hoffman, J.
We shall assume in this case, that the plaintiff represents every interest which could be affected by the seizure of the property in question, and may recover all the damages resulting from such seizure to any one whose title, or claim, he could possibly represent.
The case is then presented, of goods shipped on board a vessel about to sail, (but which had not yet broken ground,) being seized by a creditor of the shipper under lawful process, and re-landed under protest. What damages can the ship-owner legally demand?
He would be entitled, in the first place, to all the expenses attending the unlading of the goods. In the present instance this labor and expense were borne by the sheriff and his assistants. The master declined to render any service; and the plaintiff has not given any proof of a charge or expense incurred by him. The vessel was not detained in consequence of the defendant’s proceedings. By the ordinary rule, the freight to be paid includes the compensation for lading the goods. If freight, or its equivalent, can in this case be recovered, such expenses could not be recovered separately. (Cutting v. Lyons, 1 Bos. and Pull. 634.)
These observations dispose of the expenses attending the lading and unlading.
The next question is, whether the plaintiff is entitled to recover' the freight he would have earned, had the goods been transported and delivered ? It is urged that the shipper would not have been responsible for freight, had he voluntarily withdrawn the goods before the voyage was commenced. “ Freight is the price of car *199 riage, not of receiving goods to be carried." (Smith’s Mercantile Law, p. 185.) Accordingly, in Blake v. Dixon, (2 Bos. and Pull. 321,) the Court of Common Pleas determined that, supposing an action would lie for money agreed to be paid beforehand for receiving on board goods to be transported, it could not be declared upon as an agreement to pay freight.
Still, this seems rather an objection to the nature of the demand, and form of the action, than to the existence of a right.
Another class of cases approaches nearer to the present question. Such cases relate to an action for the violation of a charter-party to load a ship, in whole or in part. Damages may be recovered, in estimating which, the benefit arising from taking goods of other persons may be deducted. (Abbott on Shipping, 277; Herscher v. McCrea, 24 Wendell, 206.)
In this last case the action was for dead freight. The party had stipulated to fill so many tons of measurement, at a particular price per ton, and failed to do so. The court held, not merely that the master could fill up the deficiency, and thus the price under the charter-party be reduced, but that he was bound to do so if goods were offered. ' The rule that the charterer was liable for deficient freight was admitted, but was thus qualified. The decision that it is the master’s duty to take the new freight has not escaped criticism. (Henderson’s Maritime Law, § 193.)
These authorities bear upon the present question, but do not decide it. The withdrawal of goods after they are shipped is a peculiar case.
The subject is governed by express provisions in the French and other foreign maritime codes.
The Rhodian Law condemned, without any distinction, the merchant who withdrew his goods from a ship, to the payment of the whole freight. The Guidon de la Mer directed, that if he could not agree with the master he should pay a moiety.
The ordinance of the Marine of France (Art. 6) is, that if a vessel is laden by different shippers, (a cuillette,) by the quintal or ton, and the shipper wishes to retire the goods before her departure, he may have them discharged at his own expense, upon paying a moiety of the freight. The 291st Article of the Code of Commerce is to the same effect.
But the hirer of a vessel by a charter-party, that is, of the vessel, *200 pays the whole freight agreed upon, whatever quantity of goods he puts in the ship. This distinction has employed the critical acumen of the French commentators to explain and defend it. (Valin. Pothier. Boulay-Paty.)
The Code of Commerce also provides that the shipper shall bear the expense of lading, unlading, and also of relading.any other goods which it shall be found necessary to displace, as well as of the demurrage. (Art. 291. See Boulay-Paty Droit Commercial, tome 2, p. 380.)
We perceive in these regulations the effort to fix some reasonable rule of compromise and compensation where the service for which freight is strictly due has.never been performed, and the shipper, by breaking his engagement, deprives the ship-owner of a probable benefit.
But the English rule appears to be settled in accordance with the Rhodian Law, and makes the merchant responsible for the whole freight of the articles withdrawn. Mr. Abbott says: “ A merchant who has laden goods cannot have them relanded and delivered to him without paying the freight, and indemnifying the master against the consequences of any bill of lading signed by him.” (On Shipping, p. 531, 4th edition.)
The subject was fully examined in the late case of Tindall v. Taylor (28 L. & Eq. Rep. p. 216, Queen’s Bench, 1854). The declaration stated that certain goods had been received on board a vessel of the plaintiff’s, for conveyance from London to Port Phillip, upon the terms that two months after the sailing of the vessel, freight and primage should be paid in advance. There was an averment that two months had elapsed since the sailing of the vessel, of a demand of the freight and primage, and that the defendant had not paid the amount.
Plea. That after the receipt on board of the goods, and after a reasonable time for the vessel to have sailed, and a reasonable time before she sailed, the defendant demanded a return of the goods, and gave the plaintiff notice that he did not wish the same carried and transported, and required a re-delivery to him, but the plaintiff wholly omitted so to do, and afterwards sailed with the said goods, against the will of the defendant.
Explication. That before the defendant’s demand for the delivery of the said goods, two bills of lading had been signed and *201 delivered by the master, engaging to deliver the goods to B. & Co. at Port Phillip, or their assigns, one of which parts was transmitted to the said B. & Co. by the defendant. That the defendant had not, at any time, paid or offered to pay the freight in the declaration mentioned, nor returned or offered to return the said part of the bill of lading, nor offered to indemnify the plaintiff against any claim or right which B. & Co., or any assignee of the bill of lading, might have.
Hejoinder. That B. & Co. were the agents of the defendant, and the said bill of lading was sent to them by the defendant to be held, and was held by them as such agents, and not otherwise; and that the defendant had always been and continued the legal owner of the goods.
Lord Campbell, in delivering the judgment of the court, said: “We entirely agree to the law as laid down by Lord Tenterden in his treatise,” quoting the passage above cited. . “ By the usage of trade, the merchant, if he re-demand the goods in a reasonable time before the ship sails, is entitled to have them delivered back to him, on paying the freight that might become due for the carriage of them, and on indemnifying the master against the consequences of any bill of lading signed for them; but these are conditions to be performed before the original contract can be affected by the demand of the goods.”
“ That if any doubt could be raised upon this question, irrespective of the bills of lading, we think the action would still be maintainable. After the master, at the request of the defendant, had signed bills of lading for the goods, making them deliverable to a consignee at the port of destination, one of which bills of lading they had transmitted to their consignee, it is quite clear that the defendants had no right to the re-delivery of the goods at the port of outfit, on merely demanding them. The consignee, though agent of the shipper, might have had authority to indorse the bill to a purchaser of the goods, who, as assignee of the bill of lading, for a valuable consideration, would have become their proprietor, and entitled to demand them from the master.”
Referring to Thompson v. Dening, (14 Meeson & Wels. 403,) Lord Campbell says: “ An action of contract on the bill of lading by the endorsee of the bill might not lie; but in respect of his property in the goods, he might have maintained an action against *202 the master for detaining or converting them, and the master would be estopped from denying that he had the goods after the declaration in the bill of lading, on the faith of which the endorsee had bought and paid for them.”
Considering the law to be as stated by Mr. Abbott, and sustained by the case cited, we see no valid distinction between the case of an owner seeking to withdraw his goods after a shipment, and that of an attaching creditor taking them. As between the shipowner or master and such creditor, the rights and obligations must be the same.
In this view, then, the statute of 1841 (ch. 242, § 1) may be considered as carrying out the legal rule, and the bond therein prescribed to be given, will furnish security for what the law will oblige the creditor or sheriff to pay. Such bond is conditioned “ to pay the owner or master all expenses, damages, and charges, which may be incurred by such owner or master, or to which they may be subjected by unloading such goods from the vessel, and for all necessary detention of such vessel for that purpose.” It is also provided, that if such bond be not executed, the goods may be transported and delivered according to their destination, notwithstanding the attachment.
As, then, the liability insisted upon exists upon principles of general law, independently of the statute, we need not inquire whether the latter law remained in force since the Code; or if it has, whether the omission to give the security prescribed affects the attachment; or what other consequences might result from that neglect. The result of our opinion is, that the plaintiff is entitled to a judgment on the verdict for damages to be adjusted.
The admitted value of the goods in New York was $300, which was received by the plaintiff. He had to pay $350 or $400 in San Francisco for the non-delivery of the goods seized here. It is not stated in the case, whether the freight was deducted before such payment was made. The presumption is, that it was. If so, there would be no freight to be paid now; but if otherwise, it is to be allowed. The plaintiff insists upon his right to it, and we have therefore discussed the question.
The counsel agreed that the damages should be settled by one of the Judges who heard the appeal.
The judgment will, therefore, be for the plaintiff, the amount to be adjusted by one of the Judges, upon notice.